UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

CYNTHIA DEAU,

    Plaintiff,

v.                                                                Case No. 2:11-cv-375
                                                                HON. ROBERT HOLMES BELL

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

On December 5, 2008, Cynthia Deau filed an application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 416(I) and 423, and for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, alleging disability since March 7, 2008. See transcript of administrative proceedings at Page ID# 127-137 (hereinafter Tr. at ___). After Plaintiff's claim was denied, she requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 26). The hearing was held before ALJ Timothy J. Malloy on June 25, 2010. (Tr. at 37). Testifying at the hearing were Plaintiff and Alan Searles, a vocational expert. (Tr. 37-57). On September 3, 2010, the ALJ issued a decision finding Plaintiff was not disabled because she could perform light work during the period from March 7, 2008, her alleged onset date, through September 3, 2009, the date of the ALJ's decision. (Tr. at 50-51). On September 9, 2011, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (Tr. at 21). Plaintiff now seeks judicial review of the Commissioner's final decision denying her request for disability benefits.

Review of the Commissioner's decision is limited to whether the Commissioner applied the correct legal standard and whether the findings of the Commissioner are supported by substantial evidence. Substantial evidence is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Warner v. Commissioner of Social Security*, 375 F.3d 387, 390 (6th Cir. 2004). "The substantial evidence standard . . . presupposes that there is a zone of choice within which the decision makers can go either way without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). If substantial evidence supports the Commissioner's decision, this Court must defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). In this case, the Commissioner adopted the decision of the ALJ and it is that decision which is the subject of plaintiff's claim in this Court. An ALJ is required to follow the applicable social security regulations when making a disability determination. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004). If the ALJ fails to follow those regulations, this Court may remand the case to the Commissioner under two circumstances. First, a remand may be appropriate if a procedural error is made with respect to a regulation that is intended to confer rights on the claimant and, second, a remand may be appropriate where the failure to follow the required procedure prejudiced the claimant on the merits. *See Rabbers v. Commissioner of Social Security*, 582 F.3d 647 (6th Cir. 2009). An ALJ's failure to follow procedural rules may be considered harmless error only when "concrete factual and medical evidence" is "apparent in the record" and shows that even if the ALJ had made the required findings, the ALJ would have found the claimant not disabled. *Rabbers*, 482 F3d. at 657-58 (error was harmless because the ALJ "would have reached the same conclusion"). This Court cannot affirm the ALJ's decision if it concludes that the decision "could have been" supported by the evidence

because this would propel the Court into the fact finder, a role not envisioned by Congress. *See Simpson v. Commissioner of Social Security*, No. 08-3651, 2009 WL 2628355 at 10 (6th Cir. 2009).

Plaintiff alleges she is unable to work because of daily headaches, fatigue, heartburn, numbness in her arms and legs, dizziness, nausea, anxiety and depression. (Tr. at 320). The ALJ found that Plaintiff had the following severe impairments: morbid obesity, gastroesophageal reflux disease (GERD), and adjustment disorder with mixed anxiety and depressed mood. According to the ALJ, the above impairments caused significant limitation in Plaintiff's ability to perform basic work activities. (Tr. at 66). However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). *Id*.

The mere existence of an impairment, even a severe one, will not entitle Plaintiff to disability benefits unless the impairment prevents her from returning to past work or any other substantial gainful activity existing in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *see Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001), *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir.1988), and the symptoms must be substantiated by some objective clinical or laboratory findings. *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir.1985); *see also* 20 C.F.R. §§ 404.1529 and 416.929; Social Security Ruling (SSR) 96-7p.

The medical evidence in this case has not confirmed the presence of a disabling impairment. Initially, Plaintiff was diagnosed and treated for chronic sinusitis. (Tr. at 205-209). She also underwent gastrointestinal, pituitary, neurological, and sleep apnea evaluations to assess

her symptoms. (Tr. at 233-247). In January and February 2009, she underwent an esophogram and endoscopy, which revealed a hiatus hernia and GERD. (Tr. at 309-311). However, after these tests, Plaintiff required medical care on only two other occasions, in September 2009 and February 2010. (Tr. at 68). Plaintiff is morbidly obese. A person who has a Body Mass Index (BMI) of 40 or higher is diagnosed with morbid obesity. (Tr. at 216). The medical record indicates Plaintiff is 5 foot 7 inches tall and weighs 299 pounds, giving her a BMI of 46.83. (Tr. at 216). Yet, Plaintiff testified her weight did not impact her ability to perform her prior job as a hair stylist, a job which required her to walk and stand for eight hours, stoop, kneel, and crouch for two hours, and reach for six hours. (Tr. at 50-51). According to Plaintiff, the reason she could no longer preform her hair stylist job was because she could no longer give 100 percent attention to her customers. (Tr. at 46). At the hearing, Plaintiff testified that she takes Aciphex for heartburn, Claritin for allergies, and Cymbalta for depression and fibromyalgia, but does not receive any counseling or therapy. (Tr. at 52, 55). Plaintiff further testified that her doctors have been unable to diagnose her with a condition associated with these symptoms, except Dr. Leonard who diagnosed Plaintiff with fibromyalgia based on a single visit. (Tr. at 47). However, Dr. Leonard did not refer Plaintiff for any additional studies or tests and told Plaintiff to return if her symptoms continued. (Tr. at 47-48). Although Plaintiff went to the emergency room on multiple occasions, she has never been hospitalized because of her symptoms. (Tr. at 321).

       The record contains a short letter dated February 17, 2010, from Dr. Stephen Leonard, concluding that Plaintiff has fibromyalgia. (Tr. at 356). While noting that Plaintiff had been diagnosed with fibromyalgia, the ALJ did not find fibromyalgia to be a severe impairment. The ALJ explained his reasoning for discounting the diagnosis:

> Nevertheless, the medical evidence does not contain Dr. Leonard's treatment notes of the [Plaintiff] or, considering the record as a whole, have clinical findings or diagnostic techniques that support his diagnosis.

(Tr. at 70).

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *See Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241* (6th Cir. 2007) and *Preston v. Sec'y of Health & Human Servs.,* 854 F.2d 815, 820 (6th Cir.1988) (per curiam) (noting that objective tests are of little relevance in determining the existence or severity of fibromyalgia); *see also Swain v. Comm'r of Soc. Sec.,* 297 F.Supp.2d 986, 990 (N.D. Ohio 2003) (observing that fibromyalgia is an elusive and mysterious disease which causes severe musculoskeletal pain). Rather, fibromyalgia patients "manifest normal muscle strength and neurological reactions and have a full range of motion." *Preston,* 854 F.2d at 820. However, a diagnosis of fibromyalgia does not automatically entitle a plaintiff to disability benefits. *Vance v. Comm'r of Soc. Sec.,* 260 Fed. Appx. 801, 806 (6th Cir. 2008) (unpublished); *see also Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ("Some people may have a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [Plaintiff] is one of the minority."). The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Rogers*, 486 F.3d at 244. In the instant case, the medical record reflects that Plaintiff had undergone a series of medical tests which ruled out a number of conditions. However, the medical record does not contain Dr. Leonard's treatment notes or a record of Dr. Leonard testing the 18 focal points for tenderness. The only indication of Dr. Leonard's diagnosis methodology is found in the letter which states "based on my examination and review of studies

undertaken, [Plaintiff] has fibromyalgia." (Tr. at 356). Focal point testing is mentioned only once in the record and comes from Plaintiff's testimony at the administrative hearing, a fact of special significance given the unique nature of fibromyalgia. In response to the ALJ's inquiry into the tests that were conducted to diagnose fibromyalgia, Plaintiff stated "It's just a pressure point test and he like pushes on different sites of your body and from there, you know, that's pretty much how they test for fibromyalgia." (Tr. at 47). In light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, a record absent of documentation of a doctor administering the focal point test on Plaintiff, the only test used to diagnose fibromyalgia, is significant. Additionally, Dr. Leonard did not indicate the severity of Plaintiff's fibromyalgia or any functional limitations resulting from fibromyalgia. In fact, Plaintiff was not currently receiving additional treatment from Dr. Leonard at the time of the hearing. (Tr. at 47). Plaintiff was told to "just stick with taking the Cymbalta and try moving a little bit more each day and see how that helps. And if it doesn't seem to help to schedule another appointment with him." (Tr. at 28). The ALJ did not commit error in disregarding the diagnosis of Dr. Leonard.

Plaintiff's daily activities do not substantiate her allegations of disability. The ALJ may consider a claimant's daily activities in determining the credibility of her complaints of pain. *See Vance,* 260 Fed. Appx. at 805; *Cruse v. Comm'r of Social Security*, 502 F.3d 532, 542 (6th Cir. 2007). Plaintiff lives with her boyfriend in a new home they recently built. Despite Plaintiff's complaints of debilitating fatigue and dizziness, she was active in the building of her new home; she helped paint and cleaned up during construction. (Tr. at 42-43). Plaintiff sometimes works with her mother by doing odd jobs such as putting stamps on envelopes. (Tr. at 323). Plaintiff keeps busy by gardening, making jewelry, cleaning, and other daily chores, such as laundry and cooking. (Tr. at 44). Plaintiff talks to friends and uses the computer to "Facebook" for about an hour each day.

(Tr. at 46). Plaintiff enjoys fishing, but she has not been fishing in a year because of the work with the new house. (Tr. at 45). Plaintiff drives to the grocery store and post office, watches movies with her boyfriend, picnics at a friend's camp, and goes on boat rides. *Id*. In the "Function Report," Plaintiff related she had no problems tending to personal care or grooming, and did not need help or reminders to take her medicine. (Tr. at 176). Plaintiff also stated that her abilities to follow written and spoken instructions were "great!!" and she is able to handle changes in routine. (Tr. at 179-180). The ALJ considered these varied and extensive activities of daily living and the record as a whole in assessing Plaintiff's credibility and found Plaintiff's testimony was not entirely credible. There is no compelling reason in the record to set aside the ALJ's finding on this issue. (Tr. at 69). *See Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001) (adverse credibility finding will be set aside only for compelling reasons).

An ALJ's determination of a claimant's Residual Functioning Capacity (RFC) is a legal finding rather than a medical one. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e); Social Security Ruling (SSR) 96-5p. Thus, assessing a claimant's RFC is solely within the province of an ALJ. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e). Because the determination of a claimant's RFC can often be "dispositive" of a claimant's disability status, the Commissioner's regulations leave the final responsibility for deciding a claimant's RFC to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2); *Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (noting that "the ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form an 'assessment of his residual functional capacity"). The ALJ determined that Plaintiff had a RFC to perform light work except she could not climb ladders, ropes and scaffolds, could frequently climb ramps and stairs, could occasionally balance, stoop, crouch, kneel and crawl, and could perform simple, routine and repetitive work with no fast paced

production requirements. (Tr. at 67). In addition, Plaintiff needed to be allowed to be off task 5% of the time in addition to regular work breaks. *Id*. The ALJ concluded the objective medical evidence and medical source opinions did not provide a basis for limitations beyond those identified in his RFC finding. *Id*. Of note, the record contained no medical opinions from treating sources precluding work activity subject to the limitations as found by the ALJ.

Rob Sonnenburg, M.D., who began treating plaintiff in January 2008 for chronic sinusitis and made follow up referrals for Plaintiff's symptoms of dizziness and headaches, identified no functional limitations in his medical records. (Tr. at 205-209). Similarly the evidence from Dickinson County Health Care provided no assessed work related limitations. (Tr. at 263-288). All medical causes of Plaintiff's complaints of dizziness were ruled out. (Tr. at 270). Dr. Roell noted that Plaintiff had no weight bearing restrictions, and on mental status examination, she was alert, oriented in all three spheres, cooperative and motivated. *Id*. Although testing was positive for hiatus hernia, GERD, peptic esophagitis and ulceration of the GE junction, no treating or examining physician identified functional limitations associated with these conditions. (Tr. at 308-309).

In assessing Plaintiff's mental limitations, Dr. Marshall found Plaintiff was mildly restricted in performing activities of daily living and maintaining social functioning. (Tr. at 338). In maintaining concentration, persistence and pace, Dr. Marshall concluded Plaintiff was moderately limited because there was evidence of some memory deficiencies. (Tr. at 338-340). As Dr. Marshall observed, there was no evidence that Plaintiff had experienced episodes of decompensation. (Tr. at 338). Plaintiff retained the ability to perform rote tasks within physical limitations, follow instructions, and work with others. (Tr. at 340). Dr. Marshall's opinion was consistent with the ALJ's RFC determination, and well-supported by substantial evidence in the record. The ALJ appropriately relied on this medical opinion from Dr. Marshall, an expert in the area of social

security disability, in assessing plaintiff's disability claim. *See* 20 C.F.R. §§ 404.1527(f)(2)(I), 416.927(f)(2)(I) (ALJ considers opinions from physicians who are also experts in Social Security disability); 20 C.F.R. §§ 404.1527(d)(5), 416.927(d)(5) ("We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources.").

Dr. Halazon examined Plaintiff on April 6, 2009. (Tr. at 320). On evaluation, Dr. Halazon noted that Plaintiff was pleasant, and had good motivation. (Tr. at 324). Plaintiff's speech was coherent, logical, and adequately organized. *Id*. Plaintiff alleged that she was depressed, anxious, forgetful and had memory problems, but on examination, Plaintiff was oriented, could remember six digits forward, two backwards; and could recall three out of three objects three minutes later. *Id*. Plaintiff was inconsistent in her self reports to Dr. Halazon; for example, stating that she was socially withdrawn, but then stating that she "sees friends a couple of times a week," and communicates with friends daily on the telephone or on the computer. (Tr. at 323). Dr. Halazon found Plaintiff had a Global Assessment of Functioning (GAF) score of 52, indicating moderate symptoms and limitations.[1] (Tr. at 326). Although Dr. Halazon restricted Plaintiff to part-time work, this was not supported by her findings on examination or her assessed GAF score of 52. *Id.* The ALJ considered this medical assessment, and noting these inconsistencies, gave Dr. Halazon's assessment "little weight" consistent with the Commissioner's regulations for evaluating medical opinions. *See* 20 C.F.R. §§ 404.1527. In sum, medical and other evidence in the record provide substantial evidence supporting the ALJ's RFC determination.

---

[1] A GAF score between 51 and 60 indicates moderate symptoms. *Diagnostic and Statistical Manual of Mental Disorders* (4th ed., text rev.). *See also Smith v. Comm'r of Soc. Sec.,* 482 F.3d 873, 877 (6 th Cir. 2007) (noting that GAF scores in the high 40s to mid 50s will not preclude a plaintiff from having the mental capacity to hold at least some jobs in the national economy).

The ALJ found Plaintiff was unable to perform past relevant work as a hairstylist. In making this finding, the ALJ relied on the testimony of Vocational Expert (VE) Alan Searles who stated that a person with Plaintiff's RFC would be precluded from working as a hairstylist. (Tr. at 53-54). Upon finding that Plaintiff could not perform her past work as a hairstylist, the ALJ looked to whether Plaintiff could perform work existing in significant numbers in the national economy given her vocational profile and functional limitations. *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). In appropriate cases, where a claimant has only exertional limitations, the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Grids") resolve the issue of capability to do other work. However, if, as in this case, a claimant's RFC does not coincide with the definition of one of the ranges of work because the claimant has nonexertional limitations that may erode the occupational base, the Commissioner uses the Grids only as a framework for decision making and relies on other vocational evidence to determine whether the claimant can still do a significant number of jobs with those nonexertional limitations. *Burton v. Sec'y of HHS*, 893 F.2d 821, 822 (6th Cir. 1990). The VE's testimony provided evidence on the effects of Plaintiff's functional limitations on her occupational base. At the hearing, the ALJ asked the VE whether work existed for a hypothetical individual having the same vocational profile as Plaintiff and who could not climb ladders, ropes or scaffolds, but could occasionally climb ramps, balance, stoop, crouch, kneel and crawl, and was limited to simple, routine, and repetitive work free of fast-paced production requirements and needed to be off task 20 percent of the day in addition to regularly scheduled breaks. (Tr. at 54-55). The VE indicated that such an individual could perform a number of jobs, including work as a mail clerk (2,443 employed in Michigan), counter clerk (62,777 employed in Michigan) and cashier (22,523 employed in Michigan). (Tr. at 54). The hypothetical question upon which the ALJ relied included all of Plaintiff's limitations to the extent the ALJ found them credible

based on the evidence of record.  Accordingly, the ALJ was entitled to rely on the VE's testimony in response to his hypothetical question.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).  The VE's testimony supports the ALJ's finding that Plaintiff can perform a significant number of jobs despite her functional limitations.  *Hall*, 837 F.2d at 273.  The ALJ appropriately relied on this expert testimony in determining that Plaintiff was not disabled.

Accordingly, for the foregoing reasons, it is respectfully recommended that the decision of the Commissioner be affirmed.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

　　　　　　　　　　　　　　　　　　　 /s/ Timothy P. Greeley  
　　　　　　　　　　　　　　　　　　　TIMOTHY P. GREELEY  
　　　　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE

Dated:   July 30, 2012